```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
GOVERNMENT EMPLOYEES INSURANCE CO.,         :
GEICO INDEMNITY CO., GEICO GENERAL          :
INSURANCE COMPANY, AND GEICO CASUALTY       :
CO.,                                        :
                                            :          REPORT &
                       Plaintiffs,          :          RECOMMENDATION
                                            :          14-CV-5277 (ENV) (SMG)
          -against-                         :
                                            :
SPECTRUM NEUROLOGY GROUP, LLC, OMEGA        :
NEUROLOGICAL ASSOCIATES, LLC, MERIDIAN      :
RADIOLOGY ASSOCIATES, LLC, PROGRESSIVE      :
DIAGNOSTIC, INC., CLEAR IMAGE, INC., PREMIER:
PROFESSIONAL SERVICES, LLC,                 :
COMPREHENSIVE MEDICAL GROUP, LLC,           :
PREMIER PROFESSIONAL SERVICES, LLC,         :
COMPREHENSIVE MEDICAL GROUP, LLC,           :
PREMIER HEALTH SERVICES, LLC, THE NEURO     :
GROUP, LLC, NEW WAVE DIAGNOSTIC, LLC,       :
PALMER MEDICAL, PC, NEUROLOGY &             :
RADIOLOGY PARTNERS, PA, AMERICAN            :
NEUROLOGY & RADIOLOGY, PA,                  :
                                            :
          -and-                             :
                                            :
BRAD GOLDSTEIN, LAURENCE RUBIN, DENA        :
GOLDSTEIN, GLEN SKOLNIK, SUSAN EBY,         :
SUSAN WHITNEY, DAVE MANTOR, MELISSA         :
MANTOR, RUSSELL PACKARD,                    :
                                            :
          -and-                             ;
                                            :
SANFORD DAVIS, ALEXANDER LANDFIELD,         :
SAMANTHA MENDELSON, NIZAR SOUAYAH,          :
KEVIN CONNOR, MELVIN GROSSMAN, KEVIN        :
DRAKE,                                      :
                                            :
                       Defendants.          :
------------------------------------------------------------------- x
GOLD, STEVEN M., U.S.M.J.:
```

## INTRODUCTION

Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company, and GEICO Casualty Co. (collectively, "GEICO" or "plaintiffs") allege that defendants engaged in a scheme to submit fraudulent claims for reimbursement pursuant to New York's "no-fault" law. The no-fault law allows medical service providers that meet state licensing requirements to obtain payment from insurers for services provided to insureds who are injured in motor vehicle accidents. These payments include necessary expenses for medical treatment up to $50,000. N.Y. Ins. Law §§ 5102(a)(1), 5102(b), 5103.

To be eligible for reimbursement under the no-fault law, however, a provider of healthcare services must comply with applicable licensing requirements. 11 NYCRR § 65-3.16(a)(12). State licensing requirements prohibit individuals without a professional license from owning or controlling healthcare corporations. *See State Farm Mut. Auto. Ins. Co. v. Mallela*, 4 N.Y.3d 313, 320-21 (2005). Thus, "insurance carriers may withhold payment for [health] services provided by fraudulently incorporated enterprises to which patients have assigned their claims." *Id.* at 319. In addition, medical professional corporations may not seek or receive reimbursement for healthcare services provided by independent contractors, even if the independent contractor is licensed to provide the service. *Gov't Emps. Ins. Co. v. AMD Chiropractic, P.C.*, 2013 WL 5131057, at *2 (E.D.N.Y. Sept. 12, 2013).

Plaintiffs allege that defendants improperly sought and obtained no-fault reimbursement payments because they provided healthcare services through corporations that were not owned and controlled by a licensed healthcare professional, and by submitting claims for reimbursement for services that were, at least in some instances, not medically necessary or were provided by independent contractors. Complaint ("Compl."), Docket Entry 1, ¶¶ 1-4, 23-25, 29-31, 105-29,

163-242. Plaintiffs assert state law claims for common law fraud and unjust enrichment, and also seek a declaratory judgment providing that they are not obligated to pay any pending fraudulent claims submitted by defaulting defendants.

Two corporate defendants failed to appear or otherwise defend against this action: Premier Professional Services, LLC ("Premier Professional") and Premier Health Services, LLC ("Premier Health") (collectively "defaulting defendants").[1] Upon plaintiffs' applications, Docket Entries 56, 58, the Clerk of Court noted these defendants' default. Docket Entries 62, 64. Plaintiffs subsequently filed a motion for default judgment and a memorandum along with supporting declarations and exhibits.[2] Docket Entries 88-91. On December 10, 2015, United States District Judge Eric N. Vitaliano referred the motion to me for report and recommendation. Docket Entry 97.

In addition to the complaint and its attached exhibits 1 through 19, Docket Entry 1, I consider plaintiffs' memorandum in support of their motion for default judgment ("Pls. Mem."), Docket Entry 89; the Declaration of Michael Sirignano, counsel for plaintiffs ("Sirignano Decl."), and its attached exhibits A through F ("Sirignano Exs."), Docket Entry 90; and the Declaration of Robert Weir, a GEICO claims manager ("Weir Decl."), and its attached exhibits 1 through 3 ("Weir Exs."), Docket Entry 90-2, in making this Report. Having considered these submissions, I respectfully recommend that plaintiffs' motion be granted with respect to defendants Premier Health and Premier Professional, and that judgments be entered against these defaulting defendants and in favor of plaintiffs as more fully set forth below.

---

[1] At the outset of this litigation, plaintiffs were unable to effectuate service on defaulting defendants. Docket Entries 45-47, 89 at 2. On December 10, 2014, this Court granted plaintiffs' motion for alternate service, Docket Entry dated December 10, 2014, and plaintiffs were able to effectuate service. Docket Entries 48, 50.

[2] Plaintiffs previously filed a motion for default judgment against defaulting defendants, as well as Comprehensive Medical Group, LLC. Docket Entries 77-80. The Court denied that motion with leave to renew, Docket Entry 83, and plaintiffs subsequently renewed that motion only as to defaulting defendants, which is the motion now before the Court. Docket Entry 88.

## FACTS

The facts set forth below are drawn primarily from plaintiffs' complaint, Docket Entry 1, and, as indicated below, are deemed true for purposes of evaluating liability. Defaulting defendants—the only remaining defendants—Premier Professional and Premier Health were formed in 2004 as Delaware limited liability companies each with its principal place of business in Boca Raton, Florida. Compl. ¶¶ 23-25, 29-31. At all relevant times, defaulting defendants have been owned and controlled by unlicensed non-professionals. Compl. ¶¶ 23-25, 29-31, 47-50. Plaintiffs allege that defaulting defendants have submitted hundreds of fraudulent no-fault insurance claims relating to services provided to victims of automobile accidents in New York State that were in fact not legitimately eligible for reimbursement. Compl. ¶¶ 1, 4-5, 90-129, 170-217, 224-42.

More specifically, plaintiffs' complaint alleges that the defaulting defendants used a variety of corporate entities to submit fraudulent bills to plaintiffs for "medically unnecessary, illusory, and all-together fake diagnostic tests." Pls. Mem. at 4-5. *See* Compl. ¶¶ 1-5, 105-29, 170-217, 224-25. According to the complaint, defaulting defendants illegally provided and billed for useless and medically unnecessary neurological and radiological diagnostic testing of New York insureds, in the form of ultrasounds, Compl. ¶¶ 170-77, somatosensory evoked potentials, Compl. ¶¶ 178-90, and nerve conduction velocity tests apparently performed without the necessary electromyography companion test, Compl. ¶¶ 191-207. These fraudulent bills were submitted by defaulting defendants even though, as corporations not owned and operated by licensed professionals, they were not eligible to submit no-fault bills for reimbursement. *State Farm Mut. Auto. Ins. Co. v. Mallela*, 4 N.Y.3d 313, 320-21 (2005); Compl. ¶¶ 23-25, 29-31, 47-50, 118-28. Defendants also violated state law by employing independent contractors to render healthcare services and then seeking reimbursement for those services. *See* State of New

4

York Insurance Department, Informal Opinion of General Counsel dated February 21, 2001, Compl. Ex. 17; Compl. ¶¶ 4, 66-68, 116, 208-17. The bills and documentation were submitted to plaintiffs systematically on hundreds of NF-3 forms and bills over the course of several years.[3] Compl. ¶¶ 208-17, 224-38; Compl. Exs. 5, 7; Weir Decl. ¶ 5; Weir Exs. 1-3.

## DISCUSSION

### I. Liability of Defaulting Defendants

Once found to be in default, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Montcalm Publ'g Corp. v. Ryan*, 807 F. Supp. 975, 977 (S.D.N.Y. 1992). A court, however, retains the discretion to determine whether a final default judgment is appropriate. *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993). Thus, despite a defendant's default, the plaintiff bears the burden of demonstrating that the unchallenged allegations, without more, establish the defendant's liability on each asserted cause of action. *See Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) (recognizing the court's authority, even after default, to determine whether plaintiff has stated a cause of action); *Microsoft Corp. v. Computer Care Ctr., Inc.*, 2008 WL 4179653, at *6 (E.D.N.Y. Sept. 10, 2008).

Plaintiffs allege that defaulting defendants should be held liable for common law fraud and unjust enrichment. In addition, plaintiffs seek a declaratory judgment stating that they are not obligated to pay any outstanding claims submitted by defaulting defendants. I now consider

---

[3] An NF-3 form is the statutorily prescribed form a healthcare provider must use when submitting claims for reimbursement directly to an insurance company. Compl. ¶ 224. The NF-3 form must be verified by the healthcare provider subject to a warning about potential criminal liability for providing false or misleading information about any material fact in the submission. Compl. ¶ 104.

5

whether the facts alleged in the complaint are sufficient to establish the liability of each defaulting defendant.

    A. *Common Law Fraud Claim*

A plaintiff asserting a claim of common law fraud under New York law must allege: "(1) a material representation or omission of fact; (2) made with knowledge of its falsity; (3) with scienter or an intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) [that] such reliance caused damage to the plaintiff." *Soley v. Wasserman*, 823 F. Supp. 2d 221, 235 (S.D.N.Y. 2011) (internal quotation marks and citation omitted). The third and fourth elements of common law fraud bear further explanation. The intent prong of common law fraud is established "when it is clear that a scheme, viewed broadly, is necessarily going to injure." *AUSA Life Ins. Co. v. Ernst and Young*, 206 F.3d 202, 220-21 (2d Cir. 2000) (internal quotation marks and citation omitted). A plaintiff's reliance on intentionally fraudulent statements is reasonable without further investigation when "matters are held to be peculiarly within defendant's knowledge, . . . as [plaintiff] has no independent means of ascertaining the truth." *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1542 (2d Cir. 1997).

"[I]n federal court, fraud must be plead with particularity in accordance with Fed. R. Civ. P. 9(b)'s requirements." *AIU Ins. Co. v. Olmecs Med. Supply, Inc.*, 2005 WL 3710370, at *14 (E.D.N.Y. Feb. 22, 2005). "Pleading fraud with particularity requires the plaintiff to '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Id.* at *10 (citing *Anatian v. Coutts Bank (Switzerland) Ltd.*, 193 F.3d 85, 88 (2d Cir. 1999)). Plaintiffs need to allege only a general knowledge of the misrepresentation or omission and intent to defraud, but they must allege enough facts to give rise to a strong inference that the

6

defendants had the requisite intent to defraud. *AMD Chiropractic, P.C.*, 2013 WL 5131057, at *4. This requirement may be satisfied by alleging facts that "'show that defendants had both motive and opportunity to commit fraud,' or by alleging facts 'that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'" *Id.* (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)).

In this case, plaintiffs allege, in detail, that defaulting defendants not only knew that they were submitting fraudulent claims to plaintiffs, but that they did so intentionally as part of a calculated scheme, and that they actively concealed their fraud in order to prevent discovery and to collect money they were not entitled to receive. *See Gov't Emps. Ins. Co. v. Gateva*, 2014 WL 1330846, at *6-7 (E.D.N.Y. Mar. 30, 2014). Specifically, plaintiffs allege that defaulting defendants submitted verified NF-3 forms—forms that acknowledge that the submission of false information is a crime—representing that they were properly licensed under New York law and eligible to bill under the no-fault law, that the medical diagnostic tests they provided and billed for were medically necessary, and that those tests were performed by their employees when in fact they were conducted by independent contractors. Compl. ¶¶ 4, 66-68, 104, 116, 208-17, 224-42. Indeed, defaulting defendants represented that they were eligible to bill for no-fault reimbursement every time they made a verified submission, even though they knew that they were improperly licensed and, as corporations controlled by non-medical professionals, were ineligible to recover under New York's no-fault law. Compl. ¶¶ 118-29.

Plaintiffs have adequately established defendants' intent to defraud by alleging facts that demonstrate both motive and opportunity to commit fraud. Here, defaulting defendants had a strong motive to receive reimbursements to which they were not entitled, as well as the opportunity to receive reimbursements through fraudulent submissions to plaintiffs. Compl.

7

¶¶ 224-42. Moreover, plaintiffs' allegations demonstrate that defaulting defendants engaged in a pattern of fraud over a substantial period of time; plaintiffs have presented documents listing almost two thousand claims submitted by Premier Health and Premier Professional, indicating the form on which each claim was submitted and the date and dollar amount claimed on each submission. Compl. Exs. 5, 7; Weir Exs. 1-2. The volume of fraudulent claims, which generated more than $500,000 in payments over several years, *see* Weir Decl. ¶ 8 and Weir Exs. 1-2, is further evidence of defendants' fraudulent intent and lack of inadvertence or mistake.

Plaintiffs have also adequately alleged reasonable reliance by explaining that statutory and contractual requirements obligate plaintiffs to respond promptly to facially valid claims submitted under New York's no-fault statutory scheme, and thus limit plaintiffs' opportunity to scrutinize and investigate the propriety of apparently legitimate claims for reimbursement. Compl. ¶¶ 224-42*; see Gov't Emps. Ins. Co. v. Damien*, 2011 WL 5976071, at *4 (E.D.N.Y. Nov. 3, 2011), *adopted by* 2011 WL 6000571 (E.D.N.Y. Nov. 29, 2011). In addition, plaintiffs have alleged that defaulting defendants actively concealed their fraud, making it even more difficult for plaintiffs to uncover their wrongdoing within the thirty-day processing period. Compl. ¶¶ 226-42. Finally, plaintiffs have established that they were damaged, as they paid $501,504.18 in reimbursements to which defaulting defendants were not legally entitled. Weir Decl. ¶ 8; Weir Ex. 1; *see Gateva*, 2014 WL 1330846, at *6-7; *Damien*, 2011 WL 5976071, at *4. As the entities submitting the bills for the fraudulent tests and, therefore, the entities verifying the accuracy of the NF-3 forms, submitting them, and subsequently receiving payment for the claims defaulting defendants were active participants in the fraud. I therefore conclude that plaintiffs have sufficiently alleged the elements of common law fraud.

### B. Unjust Enrichment Claim

A plaintiff asserting a claim for unjust enrichment under New York law "must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *State Farm Mut. Auto Ins. Co. v. Rabiner*, 749 F. Supp. 2d 94, 102 (E.D.N.Y. 2010) (citing *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000)).

Plaintiffs adequately allege that defaulting defendants benefitted—in the amount of $501,504.18—at plaintiffs' expense. Weir Decl. ¶ 8; Weir Ex. 1. As discussed above, defaulting defendants submitted fraudulent bills seeking reimbursement to which they knew they were not entitled, and plaintiffs relied on the "facially valid, verified documents" and paid the bills promptly. Compl ¶¶ 116, 118-29, 170-207, 224-40. Because defaulting defendants were not entitled to payment, plaintiffs have adequately pled the elements of unjust enrichment. *Allstate Ins. Co. v. Khaimov*, 2013 U.S. Dist. LEXIS 184872, at *16-17 (E.D.N.Y. Nov. 18, 2013); *Allstate Ins. Co. v. Polack*, 2012 WL 4489282, at *5 (E.D.N.Y. Sept. 12, 2012), *adopted by* 2012 WL 4490775 (E.D.N.Y. Sept. 28, 2012).

### C. Declaratory Judgment

In a case within its jurisdiction, a district court may enter a judgment declaring "the rights and other legal relations" of the parties. 28 U.S.C. § 2201(a); *see also Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 95 (1993). A court may consider whether to enter a declaratory judgment only if the action presents an actual case or controversy that is "real and immediate, allowing specific and conclusive relief," and "ripe for adjudication." *U.S. Underwriters Ins. Co. v. Kum Gang, Inc.*, 443 F. Supp. 2d 348, 352 (E.D.N.Y. 2006) (citation omitted).

Plaintiffs have established that an actual controversy exists and that a declaratory judgment would afford specific and conclusive relief as to pending claims. As discussed above,

plaintiffs contend that GEICO has already paid out more than $500,000.00 on fraudulent claims. Weir Decl. ¶ 8. Moreover, according to plaintiffs, defendants have commenced collection actions with respect to $180,930.93 of outstanding bills.[4] Weir Decl. ¶¶ 10-11; Weir Ex. 3. Plaintiffs have adequately alleged that these pending claims are fraudulent for the reasons stated above. Accordingly, plaintiffs have established that there is an actual controversy where a declaratory judgment would afford specific relief.

Courts in this district have found it appropriate to enter declaratory judgments where fraudulently incorporated medical services corporations have claims pending against an insurance company for payment of no-fault benefits.[5] *Allstate Ins. Co. v. Smirnov*, 2013 WL 5407224, at *8 (E.D.N.Y. Aug. 21, 2013); *Gov't Emps. Ins. Co. v. Infinity Health Products, Ltd.*, 2012 WL 1427796, at *4-5 (E.D.N.Y. Apr. 6, 2012), *adopted by* 2012 WL 1432213 (E.D.N.Y. Apr. 25, 2012). I therefore respectfully recommend that this Court enter a declaratory judgment providing that plaintiffs are not obligated to pay the outstanding fraudulent claims submitted by defaulting defendants.

### III. Damages

Although the allegations of a complaint pertaining to liability are deemed admitted upon entry of a default judgment, allegations relating to damages are not. *Greyhound Exhibitgroup,*

---

[4] In fact, service was effected on defaulting defendants by serving their counsel in pending collection actions they brought against plaintiffs. Docket Entry 46, Geico's Memorandum of Law in Support of its Motion for an Order Granting Leave to Make Alternate Service, at 4 n.1.

[5] There is some division in the case law regarding whether a federal court should abstain from issuing a declaratory judgment where related state court actions are pending under the Supreme Court's *Wilton/Brillhart* doctrine. *Compare Gov't Emps. Ins. Co. v. Five Boro Psychological Servs., P.C.*, 939 F. Supp. 2d 208, 216 (E.D.N.Y. 2013) (holding that a federal court need not abstain from entering declaratory judgment against a medical services corporation) *with Gov't Emps. Ins. Co. v. Leica Supply, Inc.*, 2013 WL 1334177, at *3-4 (E.D.N.Y. Mar. 30, 2013) (denying without prejudice the motion for declaratory judgment pending the Court's receipt of information on the existence of pending state lawsuits between the plaintiff and defendant for unpaid no-fault benefit claims). I recommend adopting this Court's finding in *Five Boro Psychological Services* that *Wilton/Brillhart* abstention does not apply where, as here, the plaintiff seeks damages and declaratory relief, as opposed to declaratory relief alone. 939 F. Supp. 2d 208, 216 (citing *State Farm Mut. Auto Ins. Co. v. James M. Liguori, M.D., P.C.*, 589 F. Supp. 2d 221, 238 (E.D.N.Y. 2008)).

*Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). A court must ensure that there is a basis for the damages sought by a plaintiff before entering judgment in the amount demanded. *See Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989). A court may make this determination based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence. *See* Fed. R. Civ. P. 55(b)(2); *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991); *Fustok*, 873 F.2d at 40. Plaintiffs have submitted a declaration from Robert Weir, a GEICO Claims Manager, together with supporting documents, to demonstrate their entitlement to damages. Weir Decl.; Weir Exs. 1-3. Defaulting defendants have failed to submit any response to these filings. In light of these circumstances, a hearing on the issue of damages is not warranted.

  A. *Common Law Fraud*

Plaintiffs seek damages on their fraud claims in an amount equal to the payments they have made to defaulting defendants. For the reasons discussed above, defaulting defendants were not entitled to submit claims for reimbursement, and any payments made by plaintiffs to them are therefore appropriately recovered. Plaintiffs have submitted records of the payments they made to defaulting defendants. These records were compiled using GEICO's earnings reporting system. Weir Decl. ¶ 4; Weir Ex. 1. GEICO uses this system to generate IRS Forms 1099-MISC, suggesting its reliability, and the information relating to defaulting defendants was culled using their tax identification numbers. Weir Decl. ¶ 4. These records indicate that plaintiffs made payments in the amount of $147,671.22 to Premier Professional and $353,832.96 to Premier Health.[6] Weir Decl. ¶ 8; Weir Ex. 1; Sirignano Ex. C.

---

[6] The Court has independently calculated the sum of total payments to Premier Health and Premier Professional listed in the records provided and confirmed that the amounts listed by Weir in his declaration are accurate. I also recognize that, under New York law, a fraud action must be commenced "within two years after . . . actual or imputed discovery or within [six years] computed from the time the cause of action accrued, whichever is longer."

11

Plaintiffs seek to hold Premier Health and Premier Professional jointly and severally liable for these amounts. Plaintiffs correctly argue that New York law provides for joint and several liability where defendants acted jointly or concurrently to produce a single injury. Pls. Mem. at 18; *see Infinity Health Products, Ltd.*, 2012 WL 1427796, at *10. Joint and several liability may also be imposed where a plaintiff demonstrates that the harm it suffered as a result of the conduct of two or more defendants is "indivisible." *Infinity Health Products, Ltd.*, 2012 WL 1427796, at *11.

Here, while plaintiffs contend in conclusory fashion that defendants acted jointly, they have not alleged specific facts to support their contention. Although the complaint alleges that both defaulting defendants were at certain times controlled by the same parties, Compl. ¶¶ 23-25, 29-31, plaintiffs have not described any specific agreement between the two corporate entities or alleged any facts demonstrating that their fraudulent activities were committed in tandem. *See Allstate Ins. Co. v. Nazarov*, 2015 WL 5774459, at *17-18 (E.D.N.Y. Sept. 30, 2015) (declining to recommend imposition of joint and several liability where defendants, although controlled by the same individual, each submitted their own fraudulent documents seeking reimbursement). Nor have plaintiffs established that the injury they sustained by reimbursing Premier Professional and Premier Health is indivisible. To the contrary, and as in *Nazarov*, plaintiffs' submissions identify claims submitted by each defaulting defendant, indicate which defendant is responsible for each claim, and list the amounts paid to each defendant. Compl. Exs. 5, 7; Weir Exs. 1-3.

---

N.Y. C.P.L.R. 203(g), 213(8). The records in this case include payments that occurred as far back as 2004, which raises the possibility that defaulting defendants, had they appeared, could have raised a viable statute of limitations defense. Weir Ex. 1. However, defaulting defendants waived the statute of limitations defense by failing to respond to plaintiffs' complaint. Fed. R. Civ. P. 8(c); *see Travellers Int'l., A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1580 (2d Cir.1994) ("The general rule in federal courts is that a failure to plead an affirmative defense results in a waiver."); *Connor v. Kira Int'l, Inc.*, 2015 WL 4656530, at *6 n.7 (E.D.N.Y. July 14, 2015) (collecting cases); *Koch v. Rodenstock,* 2012 WL 5844187, at *3 n.2 (S.D.N.Y. May 9, 2012), *adopted by* 2012 WL 5845455 (S.D.N.Y. Nov. 19, 2012) (statute of limitations defense waivable upon defendant's default); *Wachs v. Winter,* 569 F. Supp. 1438, 1442 (E.D.N.Y. 1983) (same).

For the reasons stated above, I conclude that it would not be appropriate to hold Premier Health and Premier Professional jointly and severally liable. Accordingly, I recommend that plaintiffs be awarded a judgment against defaulting defendant Premier Professional in the amount of $147,671.22, and against defaulting defendant Premier Health in the amount of $353,832.96. Weir Decl. ¶ 8; Weir Ex. 1.

Plaintiffs further seek prejudgment interest at the rate of nine percent per annum on their fraud claims. N.Y. C.P.L.R. 5001, 5004; Pls. Mem. at 17. New York law provides for prejudgment interest on fraud claims, *Tosto v. Zelaya*, 2005 U.S. Dist. LEXIS 8085, at *23 (S.D.N.Y. May 12, 2003), and further provides that "interest shall be computed from the earliest ascertainable date the cause of action existed." N.Y. C.P.L.R. 5001(b). "A cause of action based on fraud accrues when the fraud is discovered or could with reasonable diligence have been discovered." *Tosto*, 2005 U.S. Dist. LEXIS 8085, at *23-24 (citing N.Y. C.P.L.R. 213(8)).

Plaintiffs have proposed a more conservative calculation method than that allowed under New York law, and request that the Court calculate interest "from the first day following the year in which the payments were made on the fraudulent claims by GEICO to the Defaulting Defendants." Pls. Mem. at 17; Sirignano Ex. C. Accordingly, I recommend that plaintiffs be awarded prejudgment interest at the statutory rate of nine percent per annum accruing on the first day following the year in which the fraudulent payments were made, in accordance with the preferred calculation method of plaintiffs, through the date of entry of judgment. *See Gov't Emps. Ins. Co. v. Gateva*, 2014 WL 1330846, at *11 (E.D.N.Y. Mar. 30, 2014). Plaintiffs calculate that they paid the following amounts during the following years, and I therefore

13

recommend interest at the rate of nine percent per year be awarded on these amounts from the dates indicated below until the date judgment is entered:[7]

| Premier Health Services, LLC | | |
|---|---|---|
| **Amount Paid** | **Billing Year** | **Date 9% Interest Begins to Run** |
| $3,257.25 | 2004 | January 1, 2005 |
| $33,491.69 | 2005 | January 1, 2006 |
| $44,500.41 | 2006 | January 1, 2007 |
| $23,253.46 | 2007 | January 1, 2008 |
| $23,297.04 | 2008 | January 1, 2009 |
| $17,014.71 | 2009 | January 1, 2010 |
| $77,389.43 | 2010 | January 1, 2011 |
| $85,457.73 | 2011 | January 1, 2012 |
| $43,586.24 | 2012 | January 1, 2013 |
| $2,585.00 | 2013 | January 1, 2014 |

| Premier Professional Services, LLC | | |
|---|---|---|
| **Amount Paid** | **Billing Year** | **Date 9% Interest Begins to Run** |
| $22,045.99 | 2004 | January 1, 2005 |
| $21,746.72 | 2005 | January 1, 2006 |
| $23,904.33 | 2006 | January 1, 2007 |
| $24,142.31 | 2007 | January 1, 2008 |
| $22,053.56 | 2008 | January 1, 2009 |
| $24,480.38 | 2009 | January 1, 2010 |
| $7,957.53 | 2010 | January 1, 2011 |
| $1,340.40 | 2011 | January 1, 2012 |

B. *Unjust Enrichment*

To the extent plaintiffs seek additional damages from defaulting defendants on their unjust enrichment claims, Compl. ¶¶ 401-06, 448-53, I recommend that their application be denied. The same damages—payments made by plaintiffs to defaulting defendants for fraudulent claims—are sought in each count, and separate awards on plaintiffs' claims for fraud and unjust enrichment would accordingly be duplicative.

---

[7] The amounts in the table are drawn from Sirignano Ex. C. The Court has cross-checked the amounts against those set forth in Weir Ex. 1 and they appear to be accurate.

*C. Set-Off Amount*

Plaintiffs' claims against some of the defendants in this action have been settled or voluntarily dismissed. Docket Entries 66, 73-75, 81-82, 87, 93-95. I therefore consider whether any amounts obtained by plaintiffs as a result of settlements reached with other defendants should be set-off against the damages awarded against the defaulting defendants here.

"New York law provides that a plaintiff who settles its claim against fewer than all defendants in an action may still pursue its claim against the non-settling defendants, but may not seek to recover twice for the same harm." *Godfrey v. Soto*, 2007 WL 2693652, at *6 (E.D.N.Y. Sept. 10, 2007); *see* N.Y. Gen. Oblig. § 15-108. The purpose of this provision is to encourage settlement, while also ensuring that a non-settling defendant is not forced to pay more than his equitable share. *Williams v. Niske*, 81 N.Y.2d 437, 443 (1993). However, the operation of the rule is not automatic; the New York Court of Appeals has highlighted that, "as an affirmative defense, General Obligations Law § 15-108(a) must be pled by a tortfeasor seeking its protection." *Schipani v. McLeod*, 541 F.3d 158, 161(2d Cir. 2008) *(citing Whalen v. Kawasaki Motors Corp., U.S.A*, 92 N.Y.2d 288, 293 (1998)). An affirmative defense is waived if not pled in the defendant's answer. Fed. R. Civ. P. (8)(c); *Chubb & Son Inc. v. Kelleher*, 2006 WL 2711543, at *3 (E.D.N.Y. Sept. 21, 2006). Additionally, the burden of establishing the potentially duplicative nature of a plaintiff's recovery falls on the non-settling defendant. *Godfrey*, 2007 WL 2693652, at *7.

Where a defendant defaults and waives the protections of General Obligations Law § 15-108, there is the potential for a windfall: "[e]ither the defaulting defendant will receive the benefit of a set-off which it has not sought nor shown entitlement to through pleading or proof, or the plaintiff will be awarded damages that duplicate to some unascertainable extent . . . ." *Id.*

15

Nevertheless, the few New York courts that have addressed a non-settling, defaulting defendant have decided that, if there is to be a windfall, it should not go to a party that has refused to participate in the litigation. *Id.* (collecting cases). Here, defaulting defendants failed to appear or defend. Docket Entries 56, 58, 62, 64. Accordingly, they forfeited their opportunity to plead the affirmative defense that General Obligations Law § 15-108 provides. For all these reasons, I recommend that any amounts obtained by plaintiffs in settlements should not be taken into account when calculating the damages to be assessed against the defaulted defendants.

## CONCLUSION

For the reasons stated in this Report and Recommendation, I respectfully recommend that plaintiffs' motion for default judgment be granted with respect to defaulting defendants, Premier Health and Premier Professional, and that judgment be entered against Premier Health in the amount of $353,832.96 and Premier Professional in the amount of $147,671.22, in addition to an award of prejudgment interest at a rate of nine percent per annum, as detailed above. Finally, I respectfully recommend that this Court enter a declaratory judgment providing that plaintiffs are not obligated to pay any outstanding fraudulent claims submitted to them for reimbursement by Premier Health and Premier Professional.

Any objections to the recommendations made in this Report must be submitted within fourteen days after filing of the Report and, in any event, no later than March 7, 2016. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections may waive the right to appeal the District Court's order. *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (discussing waiver under the former ten-day limit).

Plaintiffs shall serve this Report and Recommendation on defaulting defendants by letter sent to their last known addresses and by letter sent to counsel in defaulting defendants' outstanding collection lawsuits and shall promptly file proof of service with the Court.

/s/
STEVEN M. GOLD
United States Magistrate Judge

Dated:   Brooklyn, New York
         February 17, 2016

*U:\AJC 2015-2016\GEICO v. Spectrum Neurology Group et al\Geico et al v. Spectrum Neurology Group et al DefaultFINAL.docx*